HIGHTOWER, Judge.
The defendant, Johnifo Taylor, and his cousin, Prince Morris, were charged by grand jury indictment with second degree murder with a firearm, a violation of LSA-R.S. 14:30.1, 14:95.2, and LSA-C.Cr.P. Art. 893.1.[1] In a jury trial, Taylor was found guilty of manslaughter with a firearm, and subsequently sentenced to 21 years at hard labor, with 15 years of the sentence to be served without benefit of probation, parole or suspension or commutation of sentence. Morris was acquitted.
Although defendant made 12 assignments of error, only two were briefed. Those assignments not briefed are deemed abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA Rule 2-12.4. Finding the remaining two assignments to lack merit, we affirm defendant’s conviction; however, for the reasons subsequently stated, we amend the sentence to delete the reference to commutation.
FACTS
Defendant shot and killed 17-year-old Jarvis Ellis during the early evening hours of August 13, 1987, but claimed to have acted in self-defense. On the previous night, there had been a fist fight between defendant and Ricky Thomas, a cousin of the victim. Also, on the night of the shooting, there was an altercation between two groups or sides of individuals, one group consisting of defendant, Morris and Clare-tha Morris (a sister of Morris and cousin of the defendant), while Ellis and Thomas comprised the other side. During this encounter, defendant fired the fatal shot from a pistol, striking Ellis in the chest.
DEFENDANT’S ASSIGNMENTS OF ERROR
Defendant asserts that the trial court erred in dismissing a sworn juror on grounds of financial hardship caused by absence from work. The juror in question, Gregory W. Cobb, a self-employed hair stylist, was accepted and sworn on the second day of jury selection, making a total of five jurors empaneled. During voir dire, Mr. Cobb initially expressed concern that his work might interfere with his ability to serve as a juror, but finally stated that he could give the case his undivided attention. However, the next day Mr. Cobb notified the court that, subsequent to being accepted, he had come to realize that by serving on the jury he would lose more customers and business than he had originally thought; that this realization was causing him difficulty in remaining attentive; and that he was afraid, with the protraction of the case into the following week, his difficulty in concentrating would interfere with his giving proper consideration to the issues presented. The trial court, following testimony by the juror and over defendant’s objection, ordered Mr. Cobb removed *1239 from the jury and awarded the state and each defendant an additional two peremptory challenges.
The provisions of LSA-C.Cr.P. Art. 796 state:
If it is discovered after a juror has been accepted and sworn, that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course.
Thus, the question is whether or not the trial court correctly determined that Mr. Cobb was incompetent to serve as a juror within the meaning of Article 796.
In State v. Robertson, 518 So.2d 579 (La.App. 1st Cir.1987), writ denied, 523 So.2d 227 (La.1988), one of four jurors accepted on the first day of jury selection did not come to court the following day. After the juror was located and brought to court, she stated that, after leaving court the previous day, she discovered her employer would not pay her for the time she would spend on the jury. She further stated she could not financially afford to serve on the jury, and, as a result, felt she could not be a fair and impartial juror because her mind would not be on the trial. The trial court removed the juror, giving each defendant an additional peremptory challenge and continuing the voir dire process. Under those circumstances, the First Circuit found no error in the trial court’s removal of the sworn juror pursuant to Article 796.
In State v. Wiley, 513 So.2d 849 (La.App.2d Cir.1987), writ denied, 522 So.2d 1092 (La.1988), a similar factual situation was presented. There, a juror was selected by both the defendant and the state, and then sworn by the court. Immediately after being sworn, and before the entire jury was selected, the juror informed the court that she had no one to care for her children while she was in court. She further advised that this situation would hinder her thinking during the trial because she would be worrying about her children. The trial court determined that the juror was incompetent to serve within the meaning of Article 796, and this court affirmed.
As in both Wiley and Robertson, supra, the case at bar presents a situation in which a trial court has made a determination that a sworn juror should be removed because of inability to remain attentive as the result of worrying about matters in the juror’s private life. The trial judge expressed the opinion that Mr. Cobb had a sincere concern which was causing him difficulty, and we find no abuse of discretion in the decision to remove him. Counsel for both the defendants and the state were allowed to examine Mr. Cobb to verify his plight, and defendant was unable to demonstrate any prejudice that would result from the juror’s removal. State v. Rounsavall, 337 So.2d 190 (La.1976), which defendant cites in support of his position that removing Mr. Cobb was reversible error, was expressly overruled in State v. Marshall, 410 So.2d 1116 (La.1982).
The defendant’s one remaining assignment of error asserts that the trial court imposed an excessive and illegal sentence. As previously noted, defendant was sentenced to 21 years at hard labor, 15 years of which is to be served without benefit of probation, parole or suspension or commutation of sentence. He claims that this was excessive in violation of LSA-Const. Art. 1, § 20 (1974), and that the trial court failed to comply with the sentencing guidelines of LSA-C.Cr.P. Art. 894.1.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C. Cr.P. Art. 894.1. The sentencing judge is not required to list every aggravating or mitigating circumstance as long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). Articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with the article’s provisions. Furthermore, where the record clearly shows that an adequate factual basis exists for the sentence imposed, remand is unnecessary even in instances where there has not been full compliance with LSA-C.Cr.P. *1240 Art. 894.1. State v. Landos, 419 So.2d 475 (La.1982). The important elements which the trial judge should consider are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App.2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).
The record shows that the trial court here considered the defendant’s history as reflected by both a pre-sentence investigation report and a juvenile record. The court observed that defendant, as a juvenile, was found to have shot another person with a handgun. We note that a description of that incident can be found in Foster v. Col. Sanders Kentucky Fried Chicken, 526 So.2d 252 (La.App.2d Cir.1988), a civil suit arising from the matter. On that occasion, defendant and two of his friends sought to rob a woman and her eleven-year-old daughter who were placing an order at the drive-through menu board of a fast-food restaurant. When the woman tried to drive away, Taylor brandished a pistol and fired a shot into the car, hitting her in the arm. He was subsequently committed to the Department of Corrections for a period not to exceed his twenty-first birthday. Thus, like the present crime, the earlier juvenile incident involved defendant’s intentional act of firing a pistol and striking another person, and both offenses plainly demonstrated a propensity for violence.
The pre-sentence investigation also disclosed that this 21-year-old defendant had no children, had never been married, and had no real family or community support; he had only a ninth grade education; and he had never been engaged in gainful employment and had very few marketable job skills. Given all these factors, we conclude that an adequate factual basis exists for the sentence imposed, notwithstanding the trial judge’s rather brief articulation.
Our review must also determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
In this case the sentence imposed was within the statutory limits. The defendant was given 21 years, two years less than the maximum, and we find in that sentence no abuse of the trial court’s discretion. The judge specifically stated that, in his opinion, the defendant was given the benefit of the doubt when the jury found” him guilty of manslaughter father than second degree murder.
In State v. Crawford, 410 So.2d 1076 (La.1982), the Louisiana Supreme Court, in upholding the defendant’s maximum sentence for manslaughter, mentioned with approval the trial judge’s observation that the jury had granted the defendant all the compassion she was entitled to by returning a verdict of manslaughter instead of the charged offense of second degree murder. Similarly, in State v. Freeman, 521 So.2d 783 (La.App.2d Cir.1988), we concluded that where the facts of the case indicated the defendant’s offense was actually second degree murder rather than manslaughter, the theory that maximum sentences generally only are imposed for the most serious violation by the worst type of offender was not applicable.
Comparing defendant’s violent juvenile record with the present homicide, and considering that the jury returned a verdict of manslaughter rather than the charged offense of second degree murder, the sentence imposed is neither grossly out of proportion to the severity of the crime nor a needless imposition of pain and suffering.
Finally, however, that provision of the sentence, which requires that a portion thereof be served without the benefit of *1241 possible commutation, is improper. The power of the Governor to pardon or commute cannot be precluded by the terms of an imposed sentence. LSA-Const. Art. IV, § 5 (1974); State v. Huntley, 438 So.2d 1188 (La.App.3rd Cir.1983). Therefore, since deleting a reference to commutation does not involve the exercise of sentencing discretion, we, without the necessity to remand, accordingly amend the sentence. See State v. Fraser, 484 So.2d 122, n. 5 (La.1986).
For the foregoing reasons, defendant’s conviction is affirmed. His sentence, providing that he serve 21 years at hard labor, 15 years to be served without benefit of probation, parole or suspension of sentence, also is affirmed. However, the sentence is amended to delete the words “or commutation.”
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.

. This article has been rewritten and the substantive provisions enacted as LSA-C.Cr.P. Art. 893.3. Act No. 319 of 1988.