JjBROWN, J.,
A burglary of the Epps Town Hall occurred on or about July 14, 1995. The cash box and two guns were taken from the city clerk’s office and one gun was taken from the mayor’s office. Entrance was apparently gained through the west window of the mayor’s office. Finger *107 prints recovered from the scene matched those of defendant, James Edward Burns.[1]
Defendant was charged with simple burglary; however, a jury found him guilty of unauthorized entry of a place of business. He was given the maximum sentence of six years at hard labor. The state then charged defendant as a habitual offender and after finding him a multiple offender, the court amended defendant’s sentence to ten years at hard labor. Defendant appealed only the habitual offender conviction and sentence. This court affirmed. See State v. Burns, 29,632 (La.App.2d Cir.09/24/97), 699 So.2d 1179.
Thereafter, defendant filed an Application for Post Conviction Relief (“PCR”) alleging ineffective assistance of counsel and a denial of due process. On January 29, 2001, the trial court acted summarily on the PCR application finding that defendant was denied effective legal representation “insofar as it [application] contends that defendant was not afforded an [ 2appeal of his jury conviction.” All othe’* PCR claims were found to be without merit. The trial court granted defendant an out-of-time appeal.

Discussion

On appeal, defendant has urged two assignments of error: there was insufficient evidence to support his conviction and the trial judge erred in excusing a juror for sleeping without a hearing and over defense counsel’s objections.
Evidence presented at trial consisted primarily of three latent prints and a blood sample identified as belonging to the defendant. In addition, there was testimony that after midnight on July 14, 1995, the defendant paid his friend $40 to drive him from Epps to Delhi and spent money on several packs of beer, gasoline, and a motel room. It was 'estimated that he spent a total of less than $100. From approximately 9:00 p.m. on July 13 until the time of this trip, defendant’s whereabouts were unknown. The defense presented no witnesses. Viewing the • evidence in the light most favorable to the prosecution, we conclude that it was sufficient to convince a rational juror of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Following closing arguments and outside the presence of the jury, the following colloquy occurred.
The Court: ... And finally before we brim ¡he Jury back in, the Court wants to state that I intend to excuse one Juror from the Jury panel and use the alternate Juror, and I need to state a reason for that. One of the Jurors I felt dozed |3during a great deal of the testimony and the Court feels that it would be unfair to the State and to the defendant to continue to use him as a Juror, so I intend to release that Juror and use the alternate as the sixth Juror in this case.
Mr. Stephens: To which — to this ruling the defense objects to the ruling of the Court.
*108 Mr. Lancaster: Your Honor, for the record I’d also like for it to be noted that the State did not bring this to your attention, that this is something that you-noticed and you had commented on it earlier in the trial, as well as today’s break at lunch and quite often, and the State has also noticed that he has been sleeping, but this was not our motion, that we were not asking for this, but we do agree with the Court’s ruling.
We stated in State v. Womack, 592 So.2d 872, 882 (La.App.2d Cir.1991):
It is error to remove a juror for dozing off briefly, State v. Cass, 356 So.2d 396 (La.1978), or for merely closing his eyes while a transcript is read, State v. Johnson, 463 So.2d 620 (La.App. 1st Cir.1984). The trial court has discretion to use the services of an alternate juror, rather than to grant a mistrial, upon a proper finding that this is the best course of action. State v. Fuller, 454 So.2d 119 (La.1984). Ms. Tasby’s problems were more severe, of a longer duration and of a highly distracting nature to her fellow jurors than just dozing off or closing her eyes briefly. It was not an abuse of discretion to replace Ms. Tasby with an alternate juror.
In State v. Cass, 356 So.2d 396, 398 (La.1977), the supreme court found that the trial court’s decision to remove a juror was erroneous and noted:
[E]ven if the juror in question did briefly doze off, such is not per se proof of inability to perform, or any character of disqualification. Thus, there would be no legal cause for removing him. Had the juror been shown to have been sleeping through a substantial part of the trial or had he been unable to stay awake despite warnings or efforts to arouse him, and had defendant and the state been afforded an opportunity to explore on the record the defendant’s (sic) inability to perform on this account, we would be presented with a substantially different question for review.
|4In the present case, the only indication in the record that the removed juror was sleeping was the trial court’s comment before it summarily dismissed the juror. Neither the state nor defendant motioned the court to replace the juror with the alternate, nor did either seek a mistrial. Paradoxically, the court retained the excused juror as the alternate, “in the event they walk back in there and one of them drops dead of a heart attack.”
The state- expressed its agreement with the court’s decision and noted that in off-the-record comments the judge had previously mentioned the juror’s dozing. The prosecutor stated that he had also noticed that the juror had been sleeping. The defense attorney did not respond, other than to object. Thus, the state argues that defense counsel implicitly acquiesced in the statements of the court and prosecutor. The record does not indicate whether the defense attorney was privy to any of the judge’s off-the-record comments regarding the juror or whether he personally observed the juror. Obviously, defense counsel could have explored on the record the juror’s inability to perform but chose not to do so. Even so, under the circumstances presented, we must find that the trial court failed to state sufficient reasons for its removal of the juror.
As noted by the supreme court in State v. Cass, supra at 397, “[t]he right of the accused to have a juror selected by him try the case is a substantial one, the improper deprivation of which is prejudicial. The doctrine of harmless error is, therefore, inapplicable.” (Citations omitted).
*109 We therefore reverse defendant’s conviction and sentence and remand the matter to the trial court for a new trial.
| ^Conclusion
For the reasons set forth above, defendant’s conviction and sentence are REVERSED and the matter is REMANDED to the trial court for a new trial.

. Defendant, who resided in Epps, had returned from Delhi at approximately 9:00 p.m. on July 13, 1995. Later that evening, around midnight, defendant left with a friend, "Pop” Meadows, to visit Delhi and surrounding areas; defendant and Pop rode around, drank beer and watched television in a rented motel room in Rayville, Louisiana. Defendant purchased the beer and gasoline and paid for the motel room. The pair returned to Epps approximately 24 to 30 hours later. Defendant's fingerprints were matched to prints found at the scene and he was arrested.