| WALTZER, Judge.
STATEMENT OF THE CASE
On 28 March 1996, defendant was charged by grand jury indictment with second degree murder; to which he pled not guilty. The trial court denied defendant’s motion to suppress the identification on 24 October 1996; and, on 18 and 20 February 1997, defendant was tried by a twelve-member jury and found guilty as charged. The trial court denied defendant’s motion for new trial on 10 March 1997; and, on the same day, sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Defendant appeals. ' Because we find merit in his fourth assignment of error, we reverse the conviction and sentence and remand the case to the trial court for new trial.
FOURTH ASSIGNMENT OF ERROR: The trial court erred in dismissing a juror during the course of the trial.
Defendant complains that the State failed to show that the juror Gail Ducros was incompetent to serve as re *768 quired by La.C.Cr.P. art. 796. A review of the trial transcript shows that on the second morning of trial, the trial judge stated that he had been told by a deputy that one of the jurors was crying because her “husband’s” parole had been revoked. The trial judge added that the juror, Gail Duc-ros, stated that she did not think it was a problem and that she could still serve as a juror. The prosecutor said that during voir dire, he had asked every juror if a family member or close friend had ever been convicted of a crime and that he did not recall that Ms. Ducros’ responded affirmatively. Ms. Ducros was then questioned in the judge’s | zchambers. She said that her fiancé’s (not her husband’s) parole on a charge of aggravated rape had been “violated.” When asked why she had not said anything about this during voir dire when the prosecutor asked the jurors if they, a family member, or close friend had been convicted or accused of a crime, she responded that she thought the question referred only to her. She admitted being upset, but denied that she would hold the parole revocation against the State.
After Ms. Ducros left the judge’s chambers, the State asked that she be excused from the jury because he had cut all prospective jurors who had admitted during voir dire that family members had been convicted of a crime. The prosecutor did not allege lack of impartiality or bias. He argued:
I’d ask that she be excused from the jury for the simple fact that she, in fact, did hear me ask those questions. She, in fact, did hear the other jurors give answers, very simple answers, which would have been family members: nieces, nephews, brother — I think I heard an ex-husband — numerous people had answers, all who advised me of this. I cut those individuals, for this specific purpose: because the state has been involved in their fives, by putting someone in jail for fife or ten years. And even though these people say they can still be fair, even if some of the people pled guilty, the state still cut the individual. It has a profound effect on the family when someone is taken by the state and put into custody. I have cut each of these individuals for that reason. If she was truthful in coming forward with her answer — and it’s not like it’s a minor crime; it’s an aggravated rape. [Emphasis added.]
There is no suggestion that Ms. Ducros would have been challenged for cause had she responded correctly. The trial judge confirms the basis for his removal:
I agree. My only hesitation in granting the motion [to remove Ms. Duc-ros] is whether or not when she came in the — your selection process whether you had challenges remaining to cut her. As long as you had a challenge remaining, I will grant your motion. [Emphasis added.]
Defense counsel objected, saying “I object to cuts being used.” He subsequently enlarged the objection, noting that the record was unclear as to whether the prosecutor had specifically asked the question of Ms. Ducros. The trial court overruled the objection, noting that Ms. Ducros admitted having heard but misunderstood the question. The trial judge did not find that Ms. Ducros was partial, biased, or should or could be excused for cause.
La.C.Cr.P. art. 795(B)(1) provides that peremptory challenges shall be made before the swearing of the jury panel. La. C.Cr.P. art. 796 provides that if it is discovered after a juror has fibeen accepted and sworn, that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course.
La.C.Cr.P. art. 775(6) provides that a mistrial may be ordered if false statements of a juror during voir dire prevent a fair trial; however, the decision to grant a mistrial under such circumstances is discretionary. State v. Short, 94-0233 (La. App. 4 Cir. 5/16/95) 655 So.2d 790, writ *769 denied 95-1520 (La.11/17/95), 663 So.2d 719.
In State v. Marshall, 410 So.2d 1116 (La.1982), the Supreme Court held that the trial court did not err in dismissing a juror on the State’s challenge for cause after the jury had been sworn. The challenge was made after the juror was seen talking to the defendant in the hallway, and the trial court determined that the juror would not be impartial and that this ground was not known by the challenging party prior to acceptance. The Supreme Court stated that the trial court properly replaced the juror with an alternate pursuant to La.C.Cr.P. art. 789 because the juror’s evident partiality rendered her unable to perform or disqualified her from performing her duties. In State v. Fuller, 454 So.2d 119 (La.1984), after all of the evidence had been presented in a capital case, a juror disregarded the sequestration order and went to the bar in the hotel where the jury was sequestered. The trial judge dismissed the juror and replaced him with an alternate even though the juror denied having discussed the case with anyone. The Supreme Court found no error in this ruling, holding that the trial court had the discretion to utilize the service of an alternate juror, rather than grant a mistrial, upon a proper finding that this was the best course of action. The court further stated that the replacement of a juror with an alternate had been approved by the court when it was shown that a juror was unable to continue serving because of physical disability or was disqualified from further service because of a blatant display of prejudices and partiality.
In State v. Williams, 460 So.2d 2 (La. App. 4 Cir.1984), writ denied, 464 So.2d 1364 (La.1985) the trial court dismissed a juror for cause during trial and used an alternate instead of declaring a mistrial when the juror stated that she could not be fair to the State because she had a brother in prison. This court found that the trial court did not err in dismissing the juror even though the dismissal took place after the first witness had been sworn. In State v. Brossette, 93-1036 (La.App. 3 Cir. 3/2/94), 634 So.2d 1309, writ denied, 94-0802 (La.6/24/94), 640 So.2d 344, the trial court dismissed a juror who had sat through the whole trial after the juror expressed employment concerns because a defense character witness was her supervisor at work. The juror stated that she would fear losing her job if her supervisor discovered she had served on the jury and did not agree with her vote. The Third Circuit found that the trial court did not abuse its discretion in excusing the juror because the record indicated that she could have had trouble remaining impartial due to her employment concerns. The court further found that the trial court did not err in not dismissing another juror who had talked with the excused juror about the supervisor who was to testify as a defense character witness and her knowledge of the supervisor.
In the present case, the trial court erred in dismissing Ms. Ducros because the trial court essentially allowed the State to exercise a peremptory challenge after the jury panel had been sworn, a violation of Article 795(B)(1). That article uses the mandatory word “shall,” rather than the permissive word “may.” See La.C.Cr.P. art. 5. This conclusion that the trial court allowed the State to exercise a peremptory challenge in an untimely manner is based on the trial court’s not having dismissed Ms. Ducros on the State’s motion until after it determined that the State had not used all of its peremptory challenges during jury selection, and on the trial court’s failure to find the juror was biased or lacked impartiality.
The trial court did not find that Ms. Ducros was not impartial or that she had made false statements during voir dire. Moreover, unlike the correctly dismissed juror in State v. Williams, Ms. Ducros said that she could be fair to the State even though her fiancé’s parole had been revoked. La.C.Cr.P. art. 789, which allows the replacement of a juror with an alternate when a juror becomes unable to per *770 form or is disqualified, does not apply here because the trial court did not disqualify Ms. Ducros or find her unable to perform.
Because the trial court erred in allowing the State to exercise a peremptory challenge after trial had commenced in contravention of Article 795(B)(1) and because there was no showing that the juror was unable to perform or was disqualified from performing within the meaning of Article 789, the conviction must be reversed and the case remanded for a new trial.
In light of our disposition of this assignment of | Berror, the remaining assignments of error are moot.
CONCLUSION AND DECREE
Defendant’s conviction and sentence are reversed and the case is remanded to the trial court for new trial.
CONVICTION AND SENTENCE REVERSED. CASE REMANDED FOR NEW TRIAL.